PUEBLO DE PUERTO RICO
Apelado

v.

PABLO PEREZ LOPEZ
Apelante

Núm. KLAN-97-00165

San Juan, Puerto Rico, a 18 de marzo de 1999

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, Sr. Pablo Pérez López, solicita que revoquemos las convicciones por los delitos de asesinato en segundo grado, conspiración y violación a la Ley de Armas que recayeron en su contra mediante sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, el 31 de enero de 1997. Examinados los documentos sometidos por las partes, la transcripción de las instrucciones ofrecidas al jurado que solicitamos del Tribunal de Instancia y el derecho aplicable, resolvemos que no se cometieron los errores alegados, por lo que procede confirmar la sentencia.

### I

Al apelante se le acusó de los delitos de asesinato en primer grado y conspiración por la muerte del Sr. William Cruz, el 9 de enero de 1993, Artículos 83 y 268 del Código Penal, 33 L.P.R.A. 4002 y 4523.

De acuerdo a la exposición narrativa de la prueba, el ministerio público presentó como testigo principal de cargo al señor Rodríguez López, quien testificó bajo acuerdo con fiscalía para reducir la sentencia que cumplía por otro asesinato y para no ser acusado en el presente caso, así como en otros. El señor Rodríguez López testificó que el apelante llegó a una casa en la Barriada Israel en donde se encontraban varios conocidos suyos. Al llegar, les indicó que *"el que le había dado los tiros a Monín"* (nombre con el cual se conocía a la madre del acusado) estaba cerca, en la calle Laguna (Estipulación sobre Exposición Narrativa de la Prueba, pág. 2). Declaró, además, que él, Rodríguez López, le dijo a los demás que fueran a matarlo y todos salieron hacia la

calle Laguna *"en unión al acusado"*. El apelante los llevó a donde se encontraba la víctima, lo identificó y acto seguido se fue del lugar.

La fiscalía también presentó al Sr. Cesáreo Soto, quien declaró estar en la casa del callejón donde estaban el señor Rodríguez López y otras personas cuando llegó el apelante y les dijo que *"el individuo que le dio los tiros a Monín había salido de la cárcel y había que darle muerte"* (Estipulación sobre Exposición Narrativa de la Prueba, pág. 4). El señor Soto no participó en el asesinato, pero declaró que el grupo, que incluia al acusado, salió hacia la calle Laguna, se escucharon tiros y al regresar a donde él se encontraba le relataron cómo le habían dado muerte a la víctima. El acusado no estaba armado, los demás, sí. El señor Soto también declaró bajo un acuerdo con fiscalía para reducir la condena que cumplía por otro caso.

Otros testigos de cargo fueron los agentes que llegaron a la escena luego del asesinato, los peritos en balística y en armas de fuego y la patóloga forense que realizó la autopsia de la víctima.

La defensa sólo presentó como testigo a un agente, quien declaró que el caso no fue esclarecido hasta que los testigos Rodríguez López y Cesáreo Soto declararon y que, hasta el momento en que preparó el informe del caso, Rodríguez no había señalado a Soto como uno de los que estaba presente el día de los hechos.

Al señor Pérez López se le celebró juicio por jurado, durante el mes de septiembre de 1996, por los delitos de asesinato en segundo grado, conspiración y violación a la Ley de Armas. Concluido el juicio, fue declarado culpable mediante veredicto de 9 a 3. Luego de varios incidentes procesales, el apelante fue sentenciado a 30 años de reclusión, consecutivos con las penas impuestas en los demás casos, por la convicción en los delitos imputados.

El señor Pérez López apela ante nos alegando que el Tribunal de Primera Instancia cometió cinco errores que, a su entender, ameritan la revocación de la sentencia. Debido a que varios de los alegados errores versan sobre la corrección de las instrucciones al jurado, ordenamos la transcripción de dichas instrucciones dadas. Habiéndose presentado la transcripción, estamos en condición de resolver.

## II
Veamos cada uno de los errores alegados por separado.

El primer error señalado por el apelante es la insuficiencia de prueba *"porque la prueba científica y forense contradice el testimonio del testigo principal, y porque se estableció la falta de credibilidad de la prueba fiscal."*

Una de las contradicciones alegadas surge de las declaraciones del principal testigo de cargo, Sr. Juan Rodríguez López y de la Dra. Ofelia Vera, la patóloga forense. El señor Rodríguez López declaró que uno de los miembros del grupo que participó en el asesinato se adelantó y le disparó al señor Cruz por el lado izquierdo, que él (Rodríguez López) le disparó por el lado derecho y que los demás participantes le dispararon a la víctima cuando éste corría hacia el frente. En el contrainterrogatorio declaró que luego del primer disparo *"la víctima corre, cae al pavimento y los demás le disparan"*. (Estipulación sobre Exposición Narrativa de la Prueba, pág. 2). Por su parte, la patóloga forense declaró que las heridas que la víctima presentaba en la espalda *"tenían trayectoria de atrás hacia el frente y de derecha a izquierda y de abajo hacia arriba"*; tenía además, una herida de bala en el muslo y otra en una pierna (ver Estipulación sobre Exposición Narrativa de la Prueba, pág. 8).

Al examinar el testimonio del señor Rodríguez López notamos que es consistente con lo declarado por la patóloga en cuanto aquél admitió haberle disparado a la víctima por el lado derecho. La declaración del testigo

Rodríguez López de que se hicieron disparos mientras la víctima corría hacia al frente no controvierte lo anterior, sino que refleja la posibilidad razonable de que esas balas no alcanzaran a la víctima hasta que cayó. También es consistente con el testimonio pericial en cuanto a que las balas entraron por la espalda y no es inconsistente con la trayectoria observada de derecha a izquierda y de abajo hacia arriba.

La otra alegada contradicción surge de lo declarado por los testigos Rodríguez López y Soto, en cuanto a las expresiones verbales hechas por el apelante al llegar a donde el grupo se encontraba. El señor Rodríguez López declaró que al llegar el apelante dijo que en la calle Laguna se encontraba *"el que le había dado los tiros a Monín"* y que se fueron, junto a otros de los presentes, a matarlo (ver Estipulación sobre Exposición Narrativa de la Prueba, pág. 2). Por su parte, el señor Soto declaró que al llegar el apelante *"fue a exponernos a los muchachos de nuestro corillo que el individuo que le dio los tiros a Monín había salido de la cárcel y había que darle muerte"* (ver Estipulación sobre Exposición Narrativa de la Prueba, pág. 4).

Examinadas detenidamente ambas declaraciones, resolvemos que en lo alegado no hay inconsistencia sustancial que amerite que este Tribunal entre en consideraciones de credibilidad que fueron dirimidas por el Tribunal de Instancia y el jurado, quienes estuvieron en mejores condiciones de aquilatar la prueba.

En su segundo señalamiento, el apelante alega que: *"Instancia erró al instruir al jurado que la prueba ofrecida a los efectos que el apelante señor Pérez López abandonó el lugar de la comisión era evidencia indicativa de culpabilidad."*

Las minutas reflejan que se pidieron unas instrucciones sobre credibilidad de testigos y que la jueza instruiría sobre los testigos coautores. También surge de las minutas que se impartieron ciertas instrucciones al jurado que fueron objetadas por la defensa. Luego de que saliera el jurado a deliberar, la jueza explicó sus razones para dar la instrucción *"por huida."* especificando, según las minutas, que *"se dio como aparece en el libro de Instrucciones al Jurado".* (Minuta del 25 de septiembre de 1996, pág. 2).

Al examinar la transcripción de las instrucciones, confirmamos que la jueza de instancia usó el libro de Instrucciones al Jurado, a la pág. 30. Sabemos que aunque no estaba obligada a hacerlo, ésta es la mejor práctica, pues las instrucciones allí contenidas *"están cobijadas de una presunción de corrección".* *Pueblo v. Mattei Torres,* 121 D.P.R. 600, 620 (1988).

También surge de la transcripción que la jueza aclaró a la defensa el uso de esa instrucción. De la transcripción se desprende que el abogado de la defensa formuló su objeción a base de los elementos del delito de fuga. Así expresó: *"Nosotros entendemos, Vuestro honor, que una huida es a los efectos de huir de un oficial del Ministerio Público cuando...".* (Transcripción de Instrucciones al Jurado, pág. 35). Luego expresó que *"huir o fuga es cuando una persona ha sido ordenada a ser detenida por una persona con autoridad a que se detenga, no se detiene y se va. Una persona... o también o en la alternativa, cuando una persona que está en medio de la comisión de un delito, se percata de la presencia de un oficial del orden público y se va".* (Transcripción de Instrucciones al Jurado, pág. 38). La jueza aclaró la distinción entre huida y fuga y que la instrucción utilizada no corresponde a ese delito sino que versó *"sobre huida, no sobre fuga".* (Transcripción de Instrucciones al Jurado, pág. 40).

No es errónea la instrucción de huida como indicio de posible culpabilidad cuando no hay prueba que explique o justifique la huida del lugar de los hechos. Por el contrario, se ha resuelto que al ser inexplicada *"debe ponderarse como indicio o detalle evidenciario de posible culpabilidad, correspondiendo al juzgador de los hechos así tomarlo o descartarlo según resulte del proceso deliberativo en que se consideren todas las circunstancias que integran el caso sometido para decisión". Pueblo v. Báez Cintrón.* 102 D.P.R. 30, 35 (1974).

Sin embargo, aun cuando no procediera la instrucción, ello no ameritaría revocación, pues no se nos ha demostrado, ni surge de la prueba, que la misma tuvo efecto decisivo en el veredicto. *Pueblo v. Prados García*, 99 D.P.R. 384 (1970).

El apelante también alegó que el Tribunal de Primera Instancia *"erró al no instruir al jurado que el testimonio de supuestos participantes era inherentemente desconfiable, específicamente en ausencia de corroboración."*

La minuta del 25 de septiembre de 1993, página 1, indica que el tribunal *"se reunió con las partes en cámara y la defensa entregó cuatro instrucciones especiales en cuanto a la credibilidad de los testigos. En cuanto los testigos coautores, el Tribunal va a dar esa instrucción."* La transcripción de las instrucciones, por su parte, refleja que se impartió la instrucción sobre testimonio de coautor tal y como aparece en la Regla 156 de las de Procedimiento Criminal. ▮ Actuó correctamente la jueza de instancia al denegar la petición de una instrucción especial. La citada regla no indica, ni sugiere que el testimonio de un coautor sea *"inherentemente desconfiable"*. En cuanto a la ausencia de corroboración, basta señalar que la Regla 156 fue objeto de enmienda mediante la Ley Núm. 208 de 23 de julio de 1974, precisamente, para eliminar el requisito de corroboración del testimonio del coautor.

El cuarto error se refiere a la determinación de que existían circunstancias agravantes para sentenciar al acusado a la pena máxima por el delito de asesinato en segundo grado. Considerando las circunstancias que tuvo ante sí la jueza de instancia, que incluyen la naturaleza violenta del delito, el uso ilegal de armas y que el acusado indujo a los otros a cometer el asesinato y era miembro de una empresa delictiva, este Tribunal se acoge a *"la regla básica y uniforme de que normalmente no intervenimos en el ejercicio de la discreción del juez de instancia en la imposición de la pena"*. Tampoco tiene razón el apelante al aducir que el tribunal erró, *"al permitir que el jurado continuase deliberando hasta altas horas de la noche sin instrucciones que podían recesar y continuar el próximo día."*

El apelante alega que el jurado estuvo hasta las 11:00 p.m. deliberando. Sin embargo, la minuta del 25 de septiembre de 1993 refleja que luego de las 5:10 p.m. la Hon. Jueza de Instancia impartió instrucciones para que se hicieran arreglos para la comida del jurado y que a las 9:00 p.m. el jurado regresó con el veredicto de culpabilidad (ver minuta, págs. 3 y 4). El apelante no alega que haya ningún error en la minuta del 25 de septiembre de 1996. Sea como fuere, se ha sostenido que aun en situaciones en que el jurado ha deliberado por 13 y hasta 31 horas *"el tiempo en que un jurado va a permanecer deliberando depende de la discreción del juez."* *Pueblo v. Maldonado Dipiní*, 96 D.P.R. 897, 905 (1969).

No habiéndose cometido ninguno de los errores alegados se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 99 DTA 117

1. La Regla 156 de Procedimiento Criminal dispone que:

*"El testimonio de un coautor será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se ofrecerán instrucciones a esos efectos debido a que debemos respetar la amplia rectitud decisoria del foro de instancia."*