EL PUEBLO DE PUERTO RICO, peticionario, *v.* JAIME CALDERÓN LAUREANO, acusado y recurrido.

Número: O-82-715 Resuelto: 30 de noviembre de 1982

*Miguel Pagán, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo; *Carmen Ana Rodríguez Maldonado,* de la Sociedad para Asistencia Legal, abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Se le imputó a Jaime Calderón Laureano haber dado muerte a Guillermo Hernández. Intentaba un robo junto a otros tres individuos, acto punible como asesinato en primer grado (estatutario) por el Art. 83 del Código Penal, 33 L.P.R.A. sec. 4002.(¹) La prueba de cargo demostró, sin embargo, que la muerte de Hernández fue ocasionada por un disparo hecho por los policías estatales. Éstos, según intentó establecer la prueba de cargo, acudieron al lugar del crimen y se batieron con los asaltadores con el propósito de repeler su ataque y evitar que escaparan del arresto.(²) Dado que ni el acusado ni ninguno de sus cómplices hizo el disparo fatal, el Tribunal Superior concluyó que no trataba el caso de hechos sancionados por el Art. 83 del Código Penal. Declaró con lugar una moción de absolución perentoria. Solicitan que revisemos esa determinación.

Detuvimos los procedimientos en auxilio de nuestra jurisdicción. Concedimos plazo al recurrido para que compareciera a mostrar causa por la cual no debíamos revocar la decisión de instancia. Compareció. Sus planteamientos no nos persuaden.

---

(¹) Dispone así el Art. 83:

"Todo asesinato perpetrado por medio de veneno, acecho o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, violación, sodomía, robo, escalamiento, secuestro, estragos, mutilación o fuga constituye asesinato en primer grado, siendo de segundo grado todos los demás."

(²) Que la prueba a esos efectos fue testifical y no real, es asunto que, contrario a lo sostenido con énfasis por el recurrido, servirá a lo más como elemento de evaluación en su día para el juzgador. Véase la Regla 10 de Evidencia.

La aplicación de la regla de asesinato estatutario a casos en que la muerte que motiva la acusación es causada por actos que no surgieron directamente del delincuente, ha sido objeto de profundas divisiones en la jurisprudencia. Anotación, *Criminal Liability Where Act of Killing Is Done by One Resisting Felony or Other Unlawful Act Committed by Defendant*, 56 A.L.R.3d 239, 252–261 (1974). Ha sido también causa de debates y críticas en la doctrina. Véanse, por ejemplo: N. Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. Pa. L. Rev. 50 (1956); F. C. Moesel, Jr., *A Survey of Felony Murder*, 28 Temp. L.Q. 453, 460 y ss. (1955); W. H. Hitchler, *The Killer and His Victim in Felony-Murder Cases*, 53 Dick. L. Rev. 3 (1948); C. L. Crum, *Causal Relations and The Felony-Murder Rule: In Search of a Viable Doctrine*, 1952 Wash. U.L.Q. 191. Véanse también, entre muchos otros, las notas y los comentarios publicados en 9 U. Balt. L. Rev. 508 (1980); 23 Cath. Law. 133 (1978); 9 J. Mar. J. Prac. & Proc. 517 (1976); 7 Loy. U. Chi. L.J. 529 (1976); 52 Chi.[-]Kent L. Rev. 184 (1975); 48 Calif. L. Rev. 847 (1960).

El problema se suscita en circunstancias muy diversas. Un caso donde la aplicación del asesinato estatutario ha sido rechazada muchas veces, es aquel en que se acusa a un coautor por la muerte de un cómplice a manos de la Policía o de la víctima. Véanse, por ejemplo: *Campbell* v. *State*, 444 A.2d 1034 (1982); *People* v. *Antick*, 539 P.2d 43 (1975); *Commonwealth* v. *Redline*, 137 A.2d 472 (1958); *State* v. *Canola*, 374 A.2d 20 (1977); *Jackson* v. *State*, 589 P.2d 1052 (1979); *Weick* v. *State*, 420 A.2d 159 (1980); *Wooden* v. *Com.*, 284 S.E.2d 811 (1981); pero véase, no obstante, *State* v. *Wright*, 379 So. 2d 96 (1980). Otro tipo de casos, donde la aplicación ha sido más favorecida es aquel en que el acusado, perpetrando uno de los delitos incluidos en el asesinato estatutario, utiliza al occiso como escudo para escapar o protegerse. Véanse, *Johnson* v. *State*, 482 S.W.2d 600 (1972); *State* v. *Kress*, 253 A.2d 481 (1969); *Campbell*, ante, pág. 1041, nota 3.

■ Los hechos del presente caso limitan nuestro objetivo. De acuerdo con ellos, dirigimos nuestro análisis solamente a casos en que la muerte de un tercero inocente es causada por actuaciones dirigidas a repeler la agresión de los delincuentes o a detener su fuga.[3] La raíz de las discrepancias sobre el tema que tratamos ha estado fundamentalmente predicada sobre la naturaleza jurídica del asesinato estatutario. El punto de referencia debe ser, desde luego, el estatuto particular de que se trate. Estatutos como el nuestro y hasta un mismo estatuto en distintos tiempos, han recibido interpretaciones distintas. Véanse *People* v. *Washington*, 402 P.2d 130 (1965), y *Hornbeck* v. *State*, 77 So. 2d 876 (1955); compárese *State* v. *Majors*, 237 S.W. 486 (1922), y *State* v. *Glenn*, 429 S.W.2d 225 (1968), con *State* v. *Moore*, 580 S.W. 747 (1979). De una parte, un nutrido grupo de jurisdicciones sostiene que la legislación sobre asesinato estatutario, como las normas de *common law* de donde proviene, no intenta establecer un criterio de causalidad. Sostienen que el asesinato estatutario representa sólo una determinación legislativa sobre *mens rea* que permite prescindir de la búsqueda de alevosía, deliberación y premeditación en el acto que produjo la muerte. Concluyen que sólo una muerte causada directamente por el acusado o por un cómplice que pueda considerarse su agente, puede ser susceptible de tratamiento bajo las disposiciones del asesinato estatutario. Se conoce a esta postura como la "teoría de la agencia" en el asesinato estatutario y es la teoría que, en casos como el de autos, anima las decisiones de estados como los de New Jersey, en *Canola*, ante, pág. 30; Massachusetts, en *Commonwealth* v. *Balliro*, 209 N.E.2d 308 (1965); Pennsylvania, en *Commonwealth ex rel. Smith* v. *Myers*, 261 A.2d 550–558 (1970); Maryland, en *Jackson* v. *State*, 408 A.2d 711 (1979); California, en *Pizano* v. *Superior Court of Tulare Cty.*, 577 P.2d 659 (1978); *Washington*, ante, pág. 130; y de

---

[3] Así lo hacemos, porque esa es la prueba que intenta establecer el Ministerio Fiscal. Véase el escolio 2.

Colorado, en *Alvarez* v. *District Ct. In & For City & Cty. of Denver*, 525 P.2d 1131 (1974). Claro está, no se trata en estas jurisdicciones de librar el acto de toda responsabilidad penal, sino solo de punirlo al margen de las disposiciones del asesinato estatutario. Véanse, *Washington*, ante, pág. 134; *People* v. *Gilbert*, 408 P.2d 365, 373-374 (1966). Véase también *Blansett* v. *State*, 556 S.W.2d 322, 325-326 (1977).

■ Otro significativo grupo de jurisdicciones rechaza la teoría de la agencia en casos como el presente. Adoptan una más inclusiva, llamada de "causa próxima", que reconoce en el asesinato estatutario un intento de punir con el rigor máximo de la ley penal a aquellos participantes que aun absteniéndose de matar por mano propia, ponen en marcha, al cometer uno de los delitos comprendidos en la ley, una sucesión de eventos que, previsiblemente, conducen a la muerte de un ser humano. Véase W. R. LaFave y A. W. Scott, Jr., *Handbook on Criminal Law*, St. Paul, Minnesota, West Publishing Co., 1972, págs. 549-553. Esas jurisdicciones determinan que casos como el de autos deben regirse por la regla del asesinato estatutario. Forman un grupo no menos numeroso que incluye entre otros a Oklahoma, *Johnson* v. *State*, 386 P.2d 336, 339-340 (1963); Texas, *Miers* v. *State*, 251 S.W.2d 404 (1952); *cf. State* v. *Wright*, 379 So. 2d 96 (1979); Michigan, *People* v. *Podolski*, 52 N.W.2d 201, 204-205, *cert.* denegado, 344 U.S. 845, 888 (1952); Illinois, *People* v. *Hickman*, 319 N.E.2d 511, 513, *cert.* denegado, 421 U.S. 913 (1975), y Missouri, *State* v. *Moore*, ante, pág. 752; *State* v. *Baker*, 607 S.W.2d 153, 156 (1980).

■ Nos parece este enfoque el más razonable. Todo aquel que inicie un acto criminal debe responder de todas las consecuencias que ese acto ocasione. Véanse *Pueblo* v. *González Ruiz*, 90 D.P.R. 580 (1964); Art. 15(b) del Código Penal, 33 L.P.R.A. sec. 3062(b). Además, como expresamos recientemente por voz del Señor Juez Presidente en *Pueblo* v. *Batista Montañez*, 113 D.P.R. 307, 313 (1982), "[t]odo texto debe interpretarse a la luz de las realidades específi-

cas de la sociedad en que opera". Y según otra expresión del citado caso, "[e]stimamos que la norma que mejor cumple las necesidades del Puerto Rico de hoy" es la que propugna que en situaciones como las que presenta este caso, el acusado, si se establece lo alegado por el fiscal, está incurso en el asesinato estatutario que regula el Art. 83 del Código Penal. De hecho ya en Puerto Rico hemos reconocido que el asesinato estatutario incluye no solo una determinación legislativa de *mens rea* si que, también, un criterio sobre causalidad. Es decir, que el Art. 83 de nuestro Código Penal obedece a la noción de que un robo, por ejemplo, genera fácilmente riesgos para la vida de inocentes, que ocurran como consecuencia del mismo. Tan reciente como en *Pueblo v. Lucret Quiñones*, 111 D.P.R. 716 (1981), advertimos en opinión unánime la razonabilidad de concluir que el fundamento que movió a la Asamblea Legislativa a mantener el asesinato estatutario en el Código Penal vigente puede recogerse en las siguientes expresiones del Juez Holmes en *The Common Law*, Boston, Little, Brown & Co., 1881, pág. 59:

> . . . if experience shows, or is deemed by the law-maker to show, that somehow or other deaths which the evidence makes accidental happen disproportionately often in connection with other felonies, or with resistance to officers, or if on any other ground of policy it is deemed desirable to make special efforts for the prevention of such deaths, the lawmaker may consistently treat acts which, under the known circumstances, are felonious, or constitute resistance to officers, as having a sufficiently dangerous tendency to be put under a special ban. The law may, therefore, throw on the actor the peril, not only of the consequences foreseen by him, but also of consequences which, although not predicted by common experience, the legislator apprehends. Citado en *Lucret Quiñones*, ante, pág. 737.

Más adelante, refiriéndonos específicamente al robo, indicamos:

Siendo el delito de robo uno de tipo grave y extremadamente peligroso para la vida humana, la Legislatura válidamente puede incluirlo bajo la doctrina del asesinato estatutario. El sentido común nos dice que al efectuarse un robo, en que de ordinario los asaltantes utilizan armas de fuego o letales para producir la intimidación, es de esperarse que debido a lo desprevenido de las víctimas y fluidez situacional éstas puedan resultar lastimadas. Si por el contrario se hace uso de la fuerza física para consumarlo, la situación empeora. No es necesario mucho esfuerzo mental para comprender que al efectuarse un robo —debido al interés natural de la víctima de proteger su persona y bienes— el asaltante razonablemente ha previsto o puede prever que la consecuencia natural o probable de su acción puede desembocar en la muerte de alguna persona. Págs. 739–740.

■ Así, pues, el Art. 83 del Código Penal, según interpretado por nuestra jurisprudencia, nos une definitivamente a las jurisdicciones que aplican el rigor del asesinato estatutario a muertes sobrevenidas como consecuencia del acto delictivo, aunque éstas no hayan sido causadas por vía directa y particular del delincuente. Hoy reafirmamos esa interpretación no sólo con ánimo de mantener certeza y dirección en nuestra jurisprudencia, sino porque, en verdad, no nos corresponde alterar el juicio legislativo dirigido, como hemos visto, a la disuación de delitos que, como el robo, rebasan de ordinario su acrecentado contenido perjudicial y degeneran en la irreparable pérdida de vidas inocentes.

*Se expedirá el auto y se revocará la resolución recurrida.*