EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ L. TORRES RAMOS, acusado y apelante.

*Número:* CR-86-66     *Resuelto:* 30 de junio de 1988

*Luz M. Ríos Rosario*, abogada del apelante; *Rafael Ortiz Carrión, Procurador General*, y *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados de El Pueblo.

I

PER CURIAM: Ante el Tribunal Superior, Sala de San Juan, José L. Torres Ramos fue acusado de dos (2) cargos del delito de asesinato en primer grado, una tentativa de asesinato, una tentativa de robo, y dos (2) cargos por infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, respectivamente. Fue absuelto por el tribunal de uno de los cargos del Art. 6 de la Ley de Armas de Puerto Rico, *supra*. En los restantes, el Jurado rindió

veredicto de culpabilidad. El 5 de agosto de 1986 fue sentenciado a varias penas de reclusión.(1)

En su apelación, aunque señala cinco (5) errores, sólo discute cuatro (4).(2) Los mismos son susceptibles de ser evaluados como un ataque a la suficiencia de la prueba y a la validez de la identificación. A su juicio, la prueba de cargo no sostiene su culpabilidad más allá de duda razonable, en particular frente a su defensa de coartada. Expongamos sucinta pero integralmente los hechos establecidos por el Ministerio Fiscal.(3)

En la tarde de 7 de julio de 1985, aproximadamente a las 6:30 P.M., las Sras. Melba Iris Bianchi y Esther López vieron un automóvil Malibú amarillo que se detuvo justo frente a la residencia en que ellas estaban hablando y que está ubicada en la Carr. 842 del Bo. Caimito Alto, Río Piedras. Ambas notaron cuando de dicho vehículo descendieron dos (2) per-

---

(1) En las causas de asesinato en primer grado, noventa y nueve (99) años a ser cumplidos concurrentemente; en la tentativa de asesinato, diez (10) años a ser cumplidos de forma consecutiva con las anteriores; en la tentativa de robo, igual término y condiciones, y en las recurrentes, diez (10) años en cada caso, también consecutivos.

(2) Desistió del cuarto error. Los otros son los siguientes:

Primero: "El veredicto, fallo y sentencia es contrario a la prueba desfilada, ya que la misma es insuficiente e insatisfactoria para sostener la culpabilidad del acusado más allá de toda duda razonable."

Segundo: "Que hubo error en la apreciación de la prueba y la misma fue conflictiva."

Tercero: "Que la identificación del acusado en corte fue insuficiente para sostener la convicción más allá de toda duda razonable."

Quinto: "Que la prueba presentada es insuficiente e insatisfactoria para sostener el veredicto y se indujo a error a los miembros del jurado en dicha apreciación."

(3) La testifical consistió en los testimonios de Melba I. Bianchi Centeno (E.N.P., págs. 2–5); Esther López Reyes (E.N.P., págs. 5–7); Félix Centeno Villegas (E.N.P., págs. 7–11); Andrés Ramos (E.N.P., págs. 11–13); Carmelo Centeno Villegas (E.N.P., págs. 13–16); Marcelino González Guadalupe (E.N.P., pág. 16); Sgto. Francisco Cora (E.N.P., págs. 17–19); Aníbal González Rodríguez (E.N.P., págs. 19–22), y agente José Serrano (E.N.P., págs. 22–23).

La documental y objetiva: fotógrafos, armas, proyectiles, ropa, etc.

sonas, entre las cuales estaba el apelante Torres Ramos. Éstas se dirigieron hacia un negocio llamado "Cuchilandia San Martín". El conductor permaneció dentro del vehículo y durante los breves minutos que pasaron intercambió unas pocas palabras con las señoras Bianchi y López. Dicho conductor les manifestó que no eran del área. Al cabo de unos cinco (5) minutos regresaron sus dos (2) acompañantes, quienes subieron al automóvil y se marcharon. El referido negocio estaba cerrado.

Poco después, en un comercio conocido como "Colmado Don Chelo", situado a unos dos (2) hectómetros de la misma carretera y del sitio donde las señoras Bianchi y López habían visto el automóvil y sus pasajeros —mientras se encontraban varios parroquianos departiendo— de repente entraron al local dos (2) individuos que gritaban que se trataba de un asalto. Segundos después hubo un intercambio de disparos cuando el parroquiano Andrés Centeno Villegas —Sargento de la Policía fuera de servicio— con su arma intentó repeler a los asaltantes. En la balacera fue herido de muerte el asaltante Iván Abad García. También resultaron heridos Andrés Ramos Rivera y Andrés Centeno Villegas. Este último falleció al cabo de una semana en el hospital a causa de las heridas recibidas en el tiroteo. El otro asaltante logró huir.

Posteriormente varios testigos oculares brindaron a la Policía una descripción del asaltante que huyó. Fundándose en esa información, los agentes investigadores les sometieron a esos testigos una serie de fotografías, en las cuales todos señalaron hacia la fotografía del apelante Torres Ramos. Luego, mediante rueda de detenidos, fue plenamente identificado.

Por su parte, la prueba de coartada intentó establecer que Torres Ramos se encontraba —entre las 6:00–7:05 P.M.— en el Residencial Villa Esperanza con los testigos Reinaldo Fontán y Antonia Pérez Galarza.

## II

La prueba del Ministerio Fiscal antes resumida, en contraste con la de coartada, de ser creída como lo fue, demostró más allá de toda duda razonable los delitos imputados.

Para superar esta realidad, en su alegato éste enfatiza que algunos de los testimonios que lo identificaron eran familiares del occiso Centeno Villegas. Argumenta que otros testigos indicaron que no sabían si él había estado allí y uno de ellos reflejó dudas. Expone que el automóvil que fue identificado perteneció a un joven nombrado Rubén A. Fortuño, quien murió mientras realizaba un asalto en Salinas.[4] Aduce que se trata de un error de identificación.

■ Discrepamos. La dificultad de aceptar este enfoque —aparte de que el Jurado llegó a una conclusión distinta— es que la prueba refleja que fue satisfactoriamente identificado por los testigos Bianchi y Félix y Carmelo Centeno Villegas. No hay evidencia de que el proceso estuviera viciado de sugestividad. Aunque el frustrado asalto aconteció rápidamente, los testigos tuvieron amplia oportunidad de observarlo, prestaron atención y describieron con bastante fidelidad y certeza su físico. La identificación por fotografías fue once (11) días después del crimen y la línea de confrontación seis (6) meses después. La totalidad de las circunstancias que rodearon ambos procedimientos de identificación apoyan su validez. *Pueblo v. Figueroa Torres*, 102 D.P.R. 76 (1974); *Pueblo v. Rosso Vázquez*, 105 D.P.R. 905 (1977); *Pueblo v. Toledo Barbosa*, 105 D.P.R. 290 (1976); *Pueblo v. Morales Romero*, 100 D.P.R. 436 (1972).

■ En resumen, el apelante Torres Ramos nos pide que dejemos sin efecto el valor, credibilidad y determinación que

---

[4] El padre de este joven atestó que su hijo Rubén no se parecía físicamente al apelante Torres Ramos.

el Jurado otorgó a la prueba. En ausencia de circunstancias extraordinarias no podemos. Debemos respetarlas. *Pueblo v. Acabá Raíces*, 118 D.P.R. 369 (1987); *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Sanabria Pérez*, 113 D.P.R. 694 (1983).

### III

█ Finalmente, aun cuando no ha sido levantado por el apelante Torres Ramos, aclaramos que los hechos de su caso no encajan en la reciente decisión de *Pueblo v. Rivera Torres*, 121 D.P.R. 128 (1988), expositiva de la norma cualificada exculpatoria por la muerte del coautor del delito bajo la doctrina de asesinato estatutario. Allí, como fundamento principal, indicamos que "aun cuando el apelante [Rivera Torres] participó en la comisión de un delito grave, *sus actuaciones no fueron la causa próxima de la muerte ocasionada.* Entendemos que para imponer responsabilidad bajo la teoría de la causa próxima es necesario que el acusado o los participantes en el delito, aun cuando se hayan abstenido de matar por mano propia, hayan puesto en marcha, al cometer uno de los delitos comprendidos en la ley, *una sucesión de eventos que previsiblemente conduzcan a la muerte de un ser humano. Pueblo v. Calderón Laureano,* [113 D.P.R. 574, 578 (1982)]". (Énfasis suplido.) *Pueblo v. Rivera Torres*, supra, págs. 138-139.

Y a renglón seguido consignamos la verdadera razón de decidir: "El aquí apelante en ningún momento puso en marcha dicha sucesión de eventos. Al verse confrontado por la Policía, el apelante se limitó a soltar la bolsa que contenía el dinero robado y a huir del lugar del robo. *Fue el propio coautor Mateo Ortiz quien, en una sucesión de eventos independientes y luego de haber concluido la comisión del robo, provocó su propia muerte.* Estos eventos tenían una *conexión más estrecha* con la muerte ocasionada que la mera participación y responsabilidad por el robo por parte del

apelante." (Énfasis suplido.) *Pueblo v. Rivera Torres*, supra, pág. 139.

■ Estas expresiones son decisivamente claves a los fines de imponer responsabilidad al apelante Torres Ramos. Lo verdaderamente crucial no es la identidad de la víctima, sino la suficiencia o no de la *relación de causalidad fáctica*. Aquí el coautor asaltante Abad García fue muerto[5] en la balacera que coetáneamente se desencadenó *durante* el asalto, *dentro* del "Colmado Don Chelo". Con su participación activa y decisiva, el apelante Torres Ramos inició y puso en marcha una sucesión de eventos que presumiblemente podían desembocar, como aconteció, en la muerte de su coautor, el Sargento Centeno Villegas y el parroquiano Ramos Rivera.

Por los fundamentos expuestos, *se dictará sentencia confirmatoria*.

El Juez Asociado Señor Rebollo López emitió opinión concurrente. El Juez Asociado Señor Hernández Denton emitió opinión disidente.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Estamos conformes con el resultado al que llega el Tribunal en el presente caso. Estimamos que es el correcto; definitivamente el aquí apelante "puso en marcha una sucesión de eventos que presumiblemente podían desembocar, como aconteció, en la muerte de su coautor, el sargento Centeno Villegas y el parroquiano Ramos Rivera". Opinión del Tribu-

---

[5] Incidentalmente, la prueba no revela qué persona o disparos la produjeron.

nal, pág. 753. Procede, en su consecuencia, la confirmación de su convicción por el delito de asesinato en primer grado en relación *con la muerte del coautor* del delito de robo.

No podemos suscribir sin embargo, el razonamiento contenido en la Parte III de la opinión *per curiam* que se emite. No existe, en nuestra opinión, *diferencia fundamental* alguna entre los hechos del caso de *Pueblo v. Rivera Torres*, 121 D.P.R. 128 (1988), y los del presente. En ambos, los respectivos apelantes pusieron en marcha una sucesión de eventos que condujeron a la muerte de un ser humano —su compañero de fechorías— durante la comisión, por parte de ellos, de un delito de robo.

Recordaremos que en *Pueblo v. Rivera Torres*, supra, sin embargo, este Tribunal resolvió —por votación de sus integrantes de cuatro contra tres— que el allí apelante no respondía por el delito de asesinato estatutario en relación con la muerte del coautor.(¹) *Hoy, transcurridos apenas sesenta (60) días, el Tribunal da marcha atrás, señalando diferencias donde no existen con el propósito de distinguir un caso del otro.*

Situaciones como éstas no deben suceder; le hacen daño al Tribunal y a la profesión en general *por cuanto causan confusión y desasosiego a nivel de instancia.* La consistencia en nuestras decisiones debería de ser uno de nuestros mayores atributos.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Es lamentable que apenas dos (2) meses después de ha-

---

(¹) Es por ello que en el referido caso de *Pueblo v. Rivera Torres*, 121 D.P.R. 128 (1988), nos unimos a la opinión disidente del compañero Juez Negrón García, la cual proponía la confirmación de la convicción por el delito de asesinato en primer grado del allí apelante.

ber hecho los pronunciamientos vertidos en *Pueblo v. Rivera Torres*, 121 D.P.R. 128 (1988), una mayoría de este Tribunal hoy proceda a limitarlas a base de una interpretación muy restrictiva de la "relación de causalidad fáctica".

Vistos los hechos de este caso y conforme a los pronunciamientos vertidos en *Pueblo v. Calderón Laureano*, 113 D.P.R. 574 (1982), y *Pueblo v. Rivera Torres*, supra, en el presente caso no procedía una acusación por la muerte del coautor Iván Abad García, al amparo de la doctrina de asesinato estatutario. Contrario a la mayoría de este Tribunal, reafirmo hoy la vigencia de nuestros pronunciamientos vertidos en *Pueblo v. Rivera Torres*, supra, pág. 139, cuando señalamos que:

> El imputarle al apelante *Rivera Torres* la muerte de su coautor, provocada únicamente por las actuaciones de este último, sería extender la aplicación de la doctrina a una situación más allá de la considerada en *Pueblo v. Calderón Laureano*, supra, ya que entendemos que la doctrina de asesinato estatutario, según expresada en el Art. 83 del Código Penal, *supra*, e interpretada en *Pueblo v. Calderón Laureano*, supra, sólo comprende aquellas situaciones en que el propio autor del delito o su cómplice ocasionan una muerte o, aun cuando los autores del delito no ocasionan la muerte directamente, sí ponen en marcha su sucesión de eventos que *ocasionan la muerte de la víctima del delito o de un tercero inocente*. (Énfasis suplido y en el original.)