# 2006 DTA 89

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE PONCE**
**PANEL X**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

ELIEZER SABATER RIVERA
Peticionario

Núm. KLCE-06-00785

San Juan, Puerto Rico, a 20 de junio de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Hernández Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

### I

Por hechos ocurridos en Peñuelas el 6 de octubre de 2004, el peticionario Eliezer Sabater Rivera fue acusado por robo, 33 L.P.R.A. sec. 4279 y por infracción al Art. 5.04 de la Ley de Armas, 25 L.P.R.A. sec. 458c (Supl. 2005), por portación ilegal de un arma de fuego.

Al peticionario se le imputó, que la fecha de los hechos, como a medio día, asaltó a mano armada una gasolinera Texaco ubicada en el Barrio Tallaboa de Peñuelas y se apropió de dinero.

Presentada la acusación, el peticionario solicitó la supresión de la prueba de identificación en su contra como autor del delito. Luego de otros incidentes, incluyendo un recurso previo ante este Tribunal, KLCE-2005-01092, el Tribunal de Primera Instancia celebró una vista evidenciaria para dilucidar la moción del peticionario.

En su recurso, el peticionario ofrece la siguiente relación de la prueba desfilada en dicha vista:

El primer testigo presentado por el Ministerio Público lo fue el Sr. Humberto Díaz Rosa. Dicho testigo declaró que él era empleado de la gasolinera Texaco ubicada en la intersección de las carreteras 385 y 127 en el Barrio Tallaboa de Peñuelas.

El día de los hechos, a eso de las 12:20 p.m., se encontraba sentado entre las dos bombas de gasolina de la estación, cuando vio venir a un individuo corriendo hacia él. Lo describió como trigueño, de 5'10" de estatura. Vestía pantalón mahón largo, bien ancho, una camisa polo color amarilla y una gorra de tela color crema que le cubría la mitad de la frente.

Cuando el sujeto llegó hasta donde él, sacó una pistola del bolsillo y le apuntó diciéndole *"dame los chavos"*. El testigo se paró, sacó alrededor de 100 dólares que tenía en el bolsillo y se los entregó. El sujeto tomó el dinero y se fue corriendo.

El testigo llamó a la Policía. Cuando llegaron, les informó de lo ocurrido. Según su testimonio, antes del incidente, él había visto a la persona que lo asaltó, porque ésta vivía en el Barrio Seboruco y había ido a la estación a comprar gasolina con unos amigos.

Semana y media más tarde, el testigo fue citado al cuartel para ver los libros de fotografías. Vio muchas fotografías en uno de los libros. Al cabo de más de una hora reconoció al sujeto en una de las fotografías. Entonces vio más fotografías en la computadora y lo volvió a señalar.

Lo citaron para participar en una rueda de sospechosos, que se llevó a cabo el 28 de octubre de 2004, a las 4:00 p.m. Le dijeron que tenían un sospechoso. El llegó a eso de las 2:00 p.m. y vio al peticionario saliendo de la comandancia. Lo vio de frente y le pasó por el lado, a unos dos pies de distancia.

A eso de las 4:00 p.m. entró a la rueda de confrontación y vio al peticionario nuevamente. Tenía el número 3. El lo identificó.

A la fecha de la vista, sabe que el peticionario estaba preso en las Cucharas. Lo identificó en Sala.

A preguntas de la defensa indicó que cuando vio al sujeto corriendo hacia él sabía quién era porque vivía en el Barrio. Conocía al papá por el apodo de "*Keke*". Tan pronto vio al sujeto lo reconoció como uno de los hijos de "*Keke*". No le cupo la menor duda de su identidad. Lo reconoció cuando llegó frente a él. Le dio esa información a la Policía cuando llegaron al lugar. El agente que tomó la información se llamaba Torres. El sabía donde vivía "*Keke*".

Desde que lo reconoció hasta que se marchó transcurrieron 4 a 5 segundos. Le preguntaron porqué había ido al cuartel a ver fotografías si había reconocido a su asaltante y aclaró que "*Keke*" tenía dos hijos gemelos. Expresó que estaba seguro que el asaltante era el peticionario y no el otro hermano gemelo porque no eran gemelos fraternos, sino que eran diferentes.

Aclaró que él no identificó al peticionario en el libro de fotografías. Luego de estar mirando las fotografías por más de una hora, cambiaron a la computadora porque era más rápido. Fue entonces que lo identificó.

Se le confrontó con lo anteriormente expresado al fiscal, a los efectos de que lo había identificado tanto en el libro de las fotografías como en la computadora; el testigo declaró que lo había visto al final del libro de fotografías y en la computadora.

Cuando lo señaló en la fotografía lo identificó sin duda alguna. Dijo "*este es*". Luego lo volvió a identificar en la computadora. En ningún momento dijo que se le parecía al asaltante. Se le confrontó conque en la vista preliminar había dicho al agente que se le parecía bastante y estaba casi completamente seguro. Aclaró que estaba casi seguro de su identificación.

Se le preguntó si anteriormente había dicho que cuando lo vio en la fotografía dijo que ese era y que no tenía ninguna duda. Respondió que eso fue porque lo vio 2 veces.

Luego de ver las fotografías, transcurrió otra semana antes de celebrarse la rueda de detenidos. Le dijeron que tenían un sospechoso. Cuando llegó a la comandancia y vio al peticionario afuera, supo que era él porque ya lo había identificado antes.

En la rueda de detenidos, los cinco integrantes tenían gorras y estaban sentados. Los estuvo observando alrededor de dos minutos o más antes de señalar al peticionario. Antes de señalarlo, no estaba seguro. Lo señaló a él porque ya lo había visto en la fotografía y saliendo del cuartel.

Lo identificó porque lo vio en el asalto. Cuando vio la fotografía en la computadora, no estaba sólo. Al señalarlo, ampliaron su fotografía ocupando toda la pantalla.

La fotografía del álbum estaba sola, pero en la computadora estaba con otras fotografías.

Cuando observó la rueda de detenidos, miró dos o tres veces a todos los integrantes de lado a lado porque no estaba seguro. Es posible que hubiera dicho en la vista preliminar que tan pronto lo vio en la rueda lo señaló. Ambas versiones son correctas.

El agente José Torres Cruz declaró que trabaja para el C.I.C. en el área de Ponce.

El día de los hechos, a eso de las 12:30 p.m. recibió una llamada informando de un asalto a una gasolinera ubicada en la intersección de las carreteras 385 y 127 en Peñuelas. Fue al lugar y entrevistó al señor Humberto Díaz Rosa, quien le describió al asaltante como un sujeto que vestía pantalón mahón largo, una camisa tipo polo

color crema amarillento y una gorra de tela color crema. Le indicó que había reconocido al asaltante porque lo había visto antes, que era uno de los hijos de "*Keke*" pero no sabía cuál de los dos porque eran gemelos.

Lo citó una semana después para que viera fotografías en el cuartel. Cada libro puede tener 1000 páginas con 9-12 fotografías por página. Estuvo viendo el libro por espacio de una hora a hora y media, al cabo de lo cual siguieron en la computadora porque era más rápido.

Una vez señalado el sospechoso, imprimió su fotografía de la computadora, la que tenía la dirección de la persona. Fue a citarlo posteriormente al Barrio Encarnación. Habló con el padre del peticionario y le preguntó si tenía otro hijo. Este le indicó que tenía otro hijo llamado Ezequiel, así que citó a éste. Ezequiel es más alto que el peticionario, de piel más oscura. Tenía una chiva no muy crecida y pelo bien corto. Cuando lo comparó vio que no era y entonces citó a Eliézer para que fuera al cuartel el 28 de octubre de 2004, a eso de las 3:00 p.m. Para ese mismo día cito al Señor Díaz a una rueda de confrontación.

Cuando llegó al cuartel le dijeron que Eliézer lo había estado esperando y se había marchado. Luego regresó y se realizó la rueda. Díaz lo identificó.

El informe del delito no decía más que la descripción del sospechoso. El informe fue preparado por otro agente llamado Ramón A. Nieves López.

En un principio, los dos hijos de "*Keke*" eran sospechosos.

Acompañó al Sr. Díaz durante el examen de las fotografías y éste no identificó a nadie en los libros. Cuando pasaron a la computadora estuvo observando las fotografías por más o menos una hora antes de señalar al peticionario. Cuando señaló la fotografía del peticionario, ésta era la única que había en la pantalla, pero luego dijo que había otras cinco. Cuando lo señaló, se supo la identidad y la dirección del peticionario, pero no procedió a arrestarlo.

Citó a Ezequiel para compararlo con la fotografía y al verlo lo descartó sin la participación de Díaz.

Conoce que el procedimiento de identificación por fotografías se utiliza cuando el sospechoso no está disponible para una rueda de confrontación. En este caso no se hizo un acta de la primera identificación porque no fue un "*line-up*" por fotografías.

No arrestó al peticionario después de la primera identificación porque decidió seguir investigando si estaba preso para la fecha de los hechos. Además, como tenía un hermano gemelo, iba a constatar si la ficha era compatible con su hermano.

Luego de constatar que el peticionario no estaba preso para la fecha de los hechos, tampoco procedió a arrestarlo aunque podía hacerlo.

Se presentó en evidencia el acto de la rueda de confrontación y una fotografía instantánea de los integrantes de la rueda.

A base de la prueba desfilada, el 10 de mayo de 2006, el Tribunal de Primera Instancia emitió la resolución recurrida y denegó la moción de supresión del peticionario.

En su resolución, el Tribunal de Primera Instancia concluyó que la identificación del peticionario había sido espontánea y sin sugestividad.

El Tribunal expresó:

"*El señor Díaz tuvo la oportunidad de observar al acusado de frente al momento del asalto. Lo observó desde aproximadamente 40 pies hasta que lo tuvo frente a frente. Describió en detalle el robo y cómo actuó el [peticionario].*

*El grado de atención fue uno sustancial, ya que el acusado le apuntó con un arma, captando toda la atención del señor Díaz.*

*La corrección de la descripción previa del acusado coincidían esencialmente con el acusado. Declaró que era uno de los hijos de "Keke", que eran gemelos, pero no estaba seguro cuál de los dos.*

*En el encuentro inicial en la comandancia con el acusado confirma que era la misma persona del asalto. Amerita señalar que el encuentro en [la] comandancia no demuestra evidenciariamente elemento alguno de sugestividad, siendo este encuentro uno incidental.*

*No percibimos prueba que demuestr[e] lo contrario.*

*El nivel de certeza demostrado por el señor Díaz fue el adecuado. Por hora y media escudriñó las fotos e identificó al acusado. Igualmente en el "line up" identificó al acusado.*

*En semana y media después de las vistas, identifica claramente al acusado. El tiempo transcurrido es uno razonable y no demuestra alteraciones a la memoria o pérdida sustancial en el recuerdo.*"

El Tribunal denegó la moción de supresión del peticionario y señaló el juicio de la causa.

Insatisfecho, el peticionario acudió ante este Tribunal. Junto con su recurso, el peticionario ha presentado una moción en auxilio de jurisdicción solicitándonos la paralización de los procedimientos.

Denegamos.

## II

En su recurso, el peticionario plantea que el Tribunal de Primera Instancia erró al denegar su moción de supresión de la identificación.

En nuestra jurisdicción, según se conoce, para establecer la culpabilidad de un acusado por un delito es necesario, no sólo que se presente prueba sobre los elementos del delito imputado, sino que se identifique al acusado como el autor del mismo. *Pueblo v. Mejías*, 160 D.P.R. ___ (2003), **2003 J.T.S. 126**, a la pág. 1,335; *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302, 309 (1987); *Pueblo v. Gómez Incera*, 97 D.P.R. 249, 251-252 (1969); véase, además, *Valle v. E.L.A.*, 157 D.P.R. ___ (2002), **2002 J.T.S. 70**.

De ordinario, corresponde al jurado pasar juicio sobre estos elementos. *Pueblo v. Torres Rivera*, 137 D.P.R. 630, 638 (1994); *Pueblo v. Bonilla Romero*, 120 D.P.R. 92, 111 (1987); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 648 (1986); véase, además, *Pueblo v. Lebrón Bones*, 110 D.P.R. 780 (1981).

Ahora bien, cuando la identificación del acusado ha sido obtenida mediante un procedimiento sugestivo, el Tribunal Supremo de Puerto Rico ha resuelto que ello constituye una violación a la garantía constitucional al debido proceso de ley. *Pueblo v. Ramos y Alvarez*, 122 D.P.R. 287, 311 (1988); *Pueblo v. Gómez Incera*, 97 D.P.R. a las págs. 251-252; véanse, además, *United States v. Wade*, 388 U.S. 218 (1967); *Gilbert v. California*, 388 U.S. 263 (1967), y *Stovall v. Denno*, 388 U.S. 293 (1967).

Este tipo de evidencia resulta excluible del juicio, y se puede solicitar su supresión. Véanse, *United States v. Wade*, 388 U.S. a las págs. 239-241; *Gilbert v. California*, 388 U.S. a la pág. 272; véase, además, *Pueblo v. Rey Marrero*, 109 D.P.R. 739 (1980).

En aquellos casos en que el perjudicado o testigos de la comisión de un delito no conocen previamente al sospechoso, el Tribunal Supremo de Puerto Rico ha establecido que el procedimiento más aconsejable a seguirse es el de la celebración de una rueda de detenidos ("*line up*"). *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la pág. 1,335; *Pueblo v. Robledo*, 127 D.P.R. 964, 968 (1991); *Pueblo v. Montañez Ramos*, 100 D.P.R. 911, 915 (1972); 34 L.P.R.A. Ap. II, R. 252.

La Regla 252.1(d) de las de Procedimiento Criminal requiere que la rueda de detenidos esté compuesta por un número no menor de cuatro personas en adición al sospechoso. El precepto exige que los integrantes de la rueda tengan "*apariencia física similar a la del sospechoso, respecto a sexo, color, raza y, hasta donde sea posible, su estatura, edad, peso y vestimenta deben guardar relación con las del sospechoso.*" 34 L.P.R.A. Ap. III, R. 252.1(d).

La Regla dispone que no se permitirán indicios visibles que de manera ostensible señalen a la persona dentro de la rueda que es el sospechoso o detenido. 34 L.P.R.A. Ap. II, R. 252.1(d).

El precepto añade que, durante la rueda, no se permitirá que los testigos vean al sospechoso ni a los demás integrantes de la rueda con anterioridad a la celebración de la rueda de detenidos, que no se le informará a los testigos antes de celebración de la rueda que se tiene detenido a un sospechoso, y que no se le dará a éstos ninguna información sobre los componentes de la rueda. Se dispone que el testigo observará la rueda y "*con la menor intervención de los agentes o funcionarios del orden público*", identificará de manera positiva al autor de los hechos delictivos si éste se encuentra en la rueda. Se advierte que: "*[e]n ningún caso se le sugerirá al testigo la persona que debe seleccionar, ya sea expresamente o de cualquier otra forma.*" 34 L.P.R.A. Ap. II, R. 252.1(e).

La Regla requiere que se levante un acta de la rueda, incluyendo una fotografía de la rueda "*tal y como fue presentada a los testigos.*"

La Regla 252.2 de Procedimiento Criminal también permite que la identificación de un sospechoso sea realizada mediante fotografías. 34 L.P.R.A. Ap. II, R. 252.2. Este método puede utilizarse cuando, por entre otras razones fuera del control de los agentes del orden público, no fuere posible realizar la rueda de detenidos, o no exista sospechoso del delito. 34 L.P.R.A. Ap. II, R. 252.2; véase, *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la pág. 1,335; *Pueblo v. Rosso Vazquez*, 105 D.P.R. 905, 907-908 (1977).

Ahora bien, el Tribunal Supremo de Puerto Rico ha aclarado que el hecho de que no sea siga el procedimiento establecido por las Reglas, no tiene el efecto de automáticamente viciar una identificación o de hacerla inadmisible. *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la pág. 1,335; *Pueblo v. Robledo*, 127 D.P.R. a la pág. 968; *Pueblo v. Ortiz Pérez*, 123 D.P.R. 216, 223 (1989); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 822-823 (1983); *Pueblo v. Rivera Navarro*, 113 D.P.R. 642, 649-652 (1982).

En esos casos, debe determinarse si, a pesar de la existencia de procedimientos sugestivos, la evidencia de identificación resulta confiable.

Para evaluar la confiabilidad de la identificación, deben considerarse los siguientes criterios: (1) la oportunidad que tuvo el testigo de observar al acusado en el momento en que ocurre el acto delictivo, (2) el grado de atención del testigo, (3) la corrección de la descripción, (4) el nivel de certeza en la identificación, y (5) el tiempo transcurrido entre el crimen y la confrontación. Véanse, *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la

pág. 1,335; *Pueblo v. Torres Rivera*, 137 D.P.R. a la pág. 637; *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 608 (1988); *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. a las págs. 309-310; *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172, 183 (1978); véanse, además, *Neil v. Biggers*, 409 U.S. 188 (1972), y *Manson v. Brathwaite*, 432 U.S. 98 (1977); Ernesto Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Editorial Forum, 1991, a las págs. 266-267.

La determinación dependerá más bien de la totalidad de las circunstancias. *Pueblo v. Torres Rivera*, 137 D. P.R. a la pág. 637; *Pueblo v. Torres Ramos*, 121 D.P.R. 747, 751 (1988).

El Tribunal Supremo de Puerto Rico ha sostenido que la identificación de un acusado por un testigo que pudo observarlo por pocos segundos resulta admisible si, bajo la totalidad de las circunstancias, resulta confiable. El hecho de que el testigo o la víctima se encontrara nervioso al momento de su confrontación con el acusado no es suficiente para viciar, sin más, la identificación. *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la pág. 1,336.

A fin de cuentas, lo crucial no es el método que se utilice para obtener la identificación, sino que ésta sea *"libre, espontánea y confiable"*. *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la pág. 1,335; *Pueblo v. Ramos y Alvarez*, 122 D.P.R. a la pág. 312; *Pueblo v. Peterson Pietersz*, 107 D.P.R. a las págs. 183-184.

Ahora bien, este análisis es procedente cuando la prueba de identificación ha estado maculada por elementos de sugestividad provocados por las actuaciones de los funcionarios del Estado. Cuando ello no ocurre, no existe infracción alguna a los derechos del acusado que justifique la intervención del Juez para privar al jurado de su función de adjudicar la prueba. Véase, *Pueblo v. Mattei Torres*, 121 D.P.R. a la pág. 608; *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. a la pág. 313; *Pueblo v. García Reyes*, 113 D.P.R. 843, 848 (1983).

Si la identificación no es el resultado de gestiones que sean imputables a la Policía, realmente no hay problema de identificación ni cabe invocar la supresión de la misma. Compárese, *Pueblo v. Mattei Torres*, 121 D.P.R. a la pág. 608; *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. a la pág. 313; *Pueblo v. Lebrón González*, 113 D.P.R. 81, 99 (1982).

En particular, el Tribunal Supremo de Puerto Rico ha resuelto que cuando el testigo conoce previamente al acusado o lo ha identificado espontáneamente, realmente no hay problema de identificación que justifique la exclusión de dicha prueba. *Pueblo v. Mattei Torres*, 121 D.P.R. a la pág. 608; *Pueblo v. Rodríguez Maysonet*, 119 D. P.R. a la pág. 313; *Pueblo v. García Reyes*, 113 D.P.R. a las págs. 847-848.

En estos casos, corresponde más bien al jurado adjudicar la credibilidad de los testigos, cuando se plantea que existen conflictos en la versión ofrecida por los testigos para identificar al acusado. *Pueblo v. Torres Rivera*, 137 D.P.R. a la pág. 638; *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 127-129 (1991).

Según ha observado el Tribunal Supremo de Puerto Rico:

*"[P]rueba con algún elemento indigno de confianza es grano de todos los días para el molino del jurado. Los jurados no son tan susceptibles que no puedan evaluar inteligentemente el peso de un testimonio de identificación."*

*Pueblo v. Peterson Pietersz*, 107 D.P.R. a la pág. 184.

En la situación de autos, según hemos visto, el señor Díaz declaró que él había reconocido al peticionario como uno de los hijos de *"Keke"* y que lo conocía previamente, porque había ido a la estación a comprar gasolina. Esta manifestación fue espontánea y no fue producto de influencia alguna por parte de los agentes del Orden Público. *Pueblo v. Mattei Torres*, 121 D.P.R. a la pág. 608; *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. a la pág. 313; *Pueblo*

*v. García Reyes*, 113 D.P.R. a las págs. 847-848.

El testigo, sin embargo, expresó vacilación sobre la identidad específica del peticionario, debido a que Keke tenía dos hijos, por lo que la Policía procedió a verificar la identidad del asaltante, primero mediante el uso de fotografías y luego mediante una rueda de confrontación.

El peticionario plantea que era improcedente que se le identificara mediante fotografías, ya que él estaba disponible para la celebración de una rueda de detenidos. No detectamos, sin embargo, elementos que nos permitan concluir que dicho proceso fue, como tal, sugestivo.

El peticionario plantea que no se preparó un acta de dicho procedimiento, pero no está claro que dicha omisión, por sí sola, sea suficiente para ordenar la supresión de la prueba, en ausencia de otros elementos de sugestividad.

El peticionario plantea que la rueda celebrada también fue sugestiva, ya que el testigo previamente había identificado al peticionario mediante fotografías. El peticionario se queja de que al testigo se le informara que existía un sospechoso y que se le permitiera ver al peticionario antes de la rueda, contrario a lo requerido por la Regla 252.1 de las de Procedimiento Criminal.

Entendemos las quejas del peticionario. El Tribunal Supremo de Puerto Rico ha observado, sin embargo, que la prohibición contenida en la Regla 252.1(e)(2) de transmitir este tipo de información a los testigos previo a la rueda es de difícil cumplimiento, ya que la propia convocatoria al acto transmite el mensaje implícito que hay un sospechoso a quien identificar. *Pueblo v. Rivera Navarro*, 113 D.P.R. a las págs. 649-650.

En el presente caso, entendemos que el procedimiento de la rueda de detenidos no fue determinante porque el testigo ya había identificado espontáneamente al peticionario y lo había señalado mediante fotografías.

En cualquier caso, el Tribunal de Primera Instancia consideró que la identificación del peticionario como el autor del delito era confiable. El Tribunal, en este sentido, confirió credibilidad a la versión del Sr. Díaz, quien expresó que él había tenido la oportunidad de observar a su asaltante. Se desprende del recurso que el asalto se llevó a cabo a las 12:20 p.m. y que el asaltante estaba de frente al testigo, quien pudo observarlo bien. El testigo ofreció una descripción adecuada del sospechoso y lo identificó espontáneamente. Luego pudo seleccionar su fotografía y finalmente lo señaló en la rueda de detenidos. El testigo mostró seguridad en su identificación.

En estas circunstancias, no detectamos elementos para intervenir con la decisión del Tribunal.

Al igual que en otros tipos de determinaciones realizadas por el Tribunal de Primera Instancia, la apreciación de la prueba llevada a cabo por el Tribunal de Primera Instancia en este tipo de incidente merece deferencia. *Pueblo v. Mejías*, **2003 J.T.S. 126**, a la pág. 1,336; *Pueblo v. Ortiz Pérez*, 123 D.P.R. a las págs. 223-224.

En ausencia, de pasión, prejuicio o error manifiesto, no estamos inclinados a sustituir dicha apreciación. *Pueblo v. Somarriba García*, 131 D.P.R. 462, 472 (1992); *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49, 62-63 (1991); *Pueblo v. Echevarría*, 128 D.P.R. 299, 316 (1991).

Debe recordarse que el juzgador de los hechos tiene la oportunidad de observar y escuchar a los testigos, por lo que está en una posición superior a la de este foro para aquilatar la prueba. *Pueblo v. Acevedo Estrada*, 150 D.P.R. 84, 99 (2000); *Pueblo v. Rosario Reyes*, 138 D.P.R. a las págs. 598-599; *Pueblo v. Cabán Torres*, 117 D.P.R. a las págs. 653-654.

Según se conoce, en nuestro ordenamiento, la declaración de un testigo que sea creído por el juzgador de

los hechos es suficiente para establecer cualquier hecho, aunque no se trate de un testimonio *"perfecto"*. *Pueblo v. Chévere Heredia*, 139 D.P.R. 1, 15 (1995); *Pueblo v. Rodríguez Román,* 128 D.P.R. 121, 128 (1991); *Pérez v. Acevedo Quiñones*, 100 D.P.R. 894, 899 (1972); véase, además, 32 L.P.R.A. Ap. IV, R. 10(D).

Es al juzgador de los hechos al que le corresponde resolver la credibilidad de un testigo, cuando haya partes de su testimonio que no sean aceptables. El sólo hecho de que existan contradicciones en la declaración de un testigo, de por sí, no justifica que se rechace dicha declaración en su totalidad si las contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la culpabilidad de un acusado. *Pueblo v. Chévere Heredia*, 139 D.P.R. a la pág. 15; *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470, 483 (1992); *Pueblo v. Rodríguez Román*, 128 D.P.R. a la pág. 129; *Pueblo v. Ramos y Alvarez*, 122 D.P.R. a la pág. 317; *Pueblo v. Rivera Robles*, 121 D.P.R. 858, 865 (1988); *Pueblo v. Mattei Torres*, 121 D.P.R. a la pág. 609; véase, además, *Pueblo v. Torres Villafañe*, 143 D.P.R. 474, 487-488 (1997).

La máxima *falsus in uno, falsus in ómnibus* tampoco autoriza a rechazar toda declaración de un testigo porque se haya contradicho o faltara a la verdad en parte de su testimonio. *Pueblo v. Pagán, Ortiz,* 130 D.P.R. a la pág. 483.

En el presente caso, hemos considerado la relación de la prueba ofrecida por el peticionario. Aunque convenimos con el peticionario en que existen algunas inconsistencias en el testimonio del testigo principal en su contra, la prueba del Ministerio Público ha sido consecuente al expresar que la identificación del peticionario fue realizada de manera espontánea y que no estuvo matizada por elementos de sugestividad.

En estas circunstancias, no hay razón para excluir dicha prueba en esta etapa. *Pueblo v. Mejías,* **2003 J.T.S. 126**, a la pág. 1,335; *Pueblo v. Torres Rivera*, 137 D.P.R. a la pág. 637; *Pueblo v. Mattei Torres*, 121 D.P.R. a la pág. 608; *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. a las págs. 309-310; *Pueblo v. Peterson Pietersz*, 107 D.P.R. a la pág. 183.

Desde luego, la credibilidad y el peso que pueda merecer en última instancia dicho testimonio es una cuestión a ser adjudicada por el juzgador de los hechos durante el juicio en su fondo. *Pueblo v. Torres Rivera*, 137 D.P.R. a la pág. 638; *Pueblo v. Rodríguez Román*, 128 D.P.R. a las págs. 127-128.

Por los fundamentos expresados, se deniega el auto solicitado.

Notifíquese por teléfono y vía facsímil, además de por la vía ordinaria.

Lo pronunció el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones